**SAMS et al. v. SAMPSON et al.**

Court of Appeals of Kentucky.

Feb. 27, 1953.

Victor A. Jordan, Barbourville, for appellants.

F. D. Sampson, Barbourville, Allen Prewitt, Marion Rider and Leslie W. Morris, Frankfort, for appellees.

STEWART, Justice.

This suit was brought by the children and grandchildren of H. G. Sams and Sarah Sams, both deceased, to obtain division of their alleged one-half undivided interest in a certain tract of land, consisting of 111.5 acres, lying on Bell Fork of Stinking Creek in Knox County.

Appellee, F. D. Sampson, by special demurrer pleaded defect of parties, averring that he and his wife had on December 21, 1918, conveyed the tract to John G. Noel and Leslie W. Morris, trustees, upon certain trusts for himself and them and that Noel had died intestate in 1941. Appellants were permitted to amend their petition, joining Morris and the heirs at law of Noel as parties defendant. An answer was then filed alleging appellees had been in adverse possession of the land for more than thirty years prior to the commencement of this action on February 18, 1950.

Upon hearing the evidence the Chancellor adjudged that whatever rights appellants had acquired in the land were barred by the statute of limitations. See KRS 413.010. A judgment was entered dismissing the petition as amended and the children and grandchildren have appealed.

Appellants first contend that, since Sams continued to live on the farm as if it were his own after the conveyance by him in 1918 and up to the time he moved off the tract in 1935, they were not placed on notice that appellees were claiming ownership of the entire boundary of land until some four months before the institution of this action. It is next insisted that the statute of limitations did not run against them during their father's (or grandfather's) lifetime because he occupied the one-half undivided portion of the land inherited by them from Sarah under his right of curtesy and his possession of this land was as a tenant in common and therefore not adverse to them as remaindermen.

H. G. Sams and his wife, Sarah, purchased the land jointly on February 25, 1902. Sarah died intestate in 1913, survived by six children and by her husband. The children inherited Sarah's one-half undivided interest in the tract, subject to her husband's right of curtesy or homestead therein. Some four years later, Sams married Sallie Messer, who in 1918 joined with him in conveying the entire acreage by a metes and bounds description in fee simple to appellee, Sampson, with a covenant of general warranty title. The deed was placed of record on December 18, 1918. At the time the land was conveyed the children were all 21 years of age or older. Sams, however, continued to live on this land until 1935, moving off the tract shortly before his death in 1936.

Sampson testified that he permitted Sams to remain on the farm from year to year upon the agreement that the latter would take care of it, keep trespassers off the property, guard the timber against fires and furnish him with vegetables raised on the place. He produced several other witnesses who testified Sams told them during his lifetime that his occupancy of the farm was under the arrangement Sampson had made with him as above described. No evidence was introduced to indicate Sams considered himself other than the tenant of Sampson after 1918. Sallie Sams testified that Sams told all his children he had sold the entire acreage to Sampson. It was also shown that all the children and grandchildren continued to reside in the immediate vicinity of the land and that they visited their father now and then. The record reveals that the people in the neighborhood regarded Sampson as the owner of the farm. Since 1935 Sampson has rented the farm to several tenants and, although it is not clear whether all these tenants actually lived upon the disputed area, it is established that they did keep it under cultivation.

Mitchell Jones, testifying for appellants, stated that his father rented the farm from H. G. Sams in 1928 and also that he himself rented it from Bradley Sams, a child of H. G. Sams and one of the appellants, in 1934. This is the extent of the evidence rebutting appellees' claim of continuous adverse possession since 1918. None of the children or grandchildren testified except appellants, Bradley Sams and Ewell Sams. It was proven and not contradicted that Bradley Sams helped survey the tract at the time Sampson bought it and that he was present when the deed was executed conveying the whole tract to Sampson. Nor does the record disclose Bradley Sams made any claim of having exercised any control over the land during the lifetime of his father.

We are of the opinion the evidence amply supports the finding of the Chancellor that appellees were in adverse possession of the land from 1918 up to the date of filing this suit in 1950. Not only was actual knowledge brought home to appellants of Sampson's exclusive claim to the entire acreage at or about the time the property was conveyed to him, but appellees' holding all along has been coupled with absolute deeds to the whole property which have been of record in the proper office since Sampson first recorded his deed on December 18, 1918. These instruments, under the decisions of this Court, were sufficient in and of themselves to show the nature and extent of appellees' possession. Big Sandy Co. v. Ramey, 162 Ky. 236, 172 S.W. 508.

Coming now to the second contention, appellants take the position that no claim of adverse possession could begin to run against them until after the death of H. G. Sams in 1936, as he was a tenant in common with appellants and appellees by virtue of his right of curtesy in and to the land that descended to them by inheritance from Sarah Sams.

The tract of land lies along Jordan's Branch of Bell Fork, extending to the top of the mountain on each side. Only a small part of the land—that lying adjacent to the branch—is susceptible of cultivation; the remainder is in timber. Sampson paid $900 for the entire tract in 1918. Appellant, Ewell Sams, fixed the value of the land at $10 per acre in 1918. Thus, it

is definitely established that the value of the undivided one-half interest of Sarah in the tract of land at the time of her death in 1913 was much less than $1000 or even half of that amount. At the time of the conveyance of the tract to Sampson in 1918 neither curtesy nor homestead had been assigned to Sams as the surviving husband. He had the right to elect whether he would take the one or the other, but he could not take both, and after his selection he could have had his choice allotted to him. Sarah's heirs at law had an equal right to require him to make such an election within a reasonable time. At the time he conveyed the land to Sampson in 1918, five years after his wife's death, it is to be conclusively presumed as a matter of law, after such lapse of time, that he elected to take a homestead interest since that estate was the more beneficial. The cases fully sustain this proposition. See Burchett v. James, Ky., 246 S.W.2d 461; Anderson v. Sanders, 193 Ky. 364, 236 S.W. 561; Campbell v. Whisman, 183 Ky. 256, 209 S.W. 27; and Carver v. Elmore, 147 Ky. 521, 144 S.W. 1062. Consequently, the effect of Sams' conveyance of the entire tract in fee, with covenant of general warranty, was to extinguish his homestead right in the undivided one-half interest in the land owned by Sarah at the time of her death, and the heirs at law of Sarah thereupon became entitled to the immediate possession of their individual interest therein. Sampson took nothing as to Sarah's interest under his deed from Sams, but he became an adverse holder of her one-half interest from the time he took possession of it. Settle v. Simpson, 204 Ky. 470, 264 S.W. 1092.

Sampson having taken possession of the entire farm on December 18, 1918, as we have shown, and he and the other appellees having continuously held Sarah's interest openly, notoriously, adversely and peaceably until the institution of this action in 1950, their possession of the tract in controversy has long since ripened into title under the 15-year statute of limitations. We conclude the lower court did not err in dismissing the petition as amended.

Wherefore, the judgment is affirmed.